By the Court.—Sedgwick, Ch. J.
The question upon the trial was whether the answer contained a defense. The complaint was upon two promissory notes made by the firm of which the defendant was the survivor. The defendant claimed that the answer made the defense, that the plaintiffs had agreed to renew the notes.
The answer averred that defendant’s firm and plaintiffs’ firm made two agreements which it is now assumed were upon consideration and are to be construed together. The first was signed by the members of the defendant’s firm. Its substance was that in consideration of loans made to them by the plaintiffs “ and for which we gave you our notes at six months from the 14th inst., which everything being satisfactory are to be renewed so as to make the loan of two years duration, we agree in the event of any disaster to us that shall necessitate the winding up of our affairs, or an assignment, to make your loan of $7,500, a preferred debt above any or all other loans or debts of ours.”
The second agreement was, among other things, that the plaintiffs agreed that they would renew from time to time, the notes as might be necessary, “ except in case of unusual disaster to the said firm of Seely & Trowbridge, so that the same should be continued for two years, as mentioned in the said agreement above set *287 forth, from the said 14th day of May, 1887, and the said Seely & Trowbridge also further agree to allow the said Arnold & Co. to exercise such supervision over the business of the said firm of Seely & Trowbridge by way of examining their books of account and bank and cash books, and by way of advising in regard to what payment of notes or other considerable payments, the said Seely & Trowbridge should make as is usually exercised and directed by persons who are partners together in business.”
The answer averred that the defendant’s firm, before the maturity of the notes, made a general assignment for the benefit of its creditors. The making of this, prevented any obligation of the plaintiffs to renew the notes, unless there were other averments of facts which if proven would show that notwithstanding the occurrence of an unusual disaster, namely, the assignment, the plaintiffs were bound to renew. The defendant claimed that there were such averments and these are now to be examined.
The answer averred that the assignment was induced by the wrongful acts of the plaintiffs. These wrongful acts, as alleged, were that the plaintiffs claimed the right to dictate and direct in regard to the conduct of defendant’s firm and especially attempted to dictate and control that firm in regard to the payment of certain notes made by the firm, and claimed and insisted that under the agreements, the defendant’s firm had no right to pay the notes without the permission of the plaintiffs ■ and further insisted that under the agreements the plaintiffs had the right to dictate and as far as they saw fit, to control the management and conduct of the business of the defendant’s firm; that the plaintiffs after-wards notified the defendant’s firm that the plaintiffs would not renew the notes but would insist upon their payment, and subsequently claimed and insisted that defendant’s firm should make an assignment for the benefit of their creditors.
*288 These averments do not disclose any wrongful act by plaintiffs. No one of the acts was a violation of law or of any contract-duty to the defendant’s firm. If the attempted dictation or control, was in excess of the privileges of the plaintiffs tó supervise the business of the defendant and to advise as to it, as is usually done by a partner, yet as to such an excess, the plaintiffs would not be guilty of a tort or wrong, more than a third person doing or saying the same things would be guilty.
The answer also averred that the plaintiffs threatened that if the defendant’s firm did not make an assignment, the plaintiffs would pursue the defendant’s firm in every way possible under the law, until all the plaintiffs’ claim should be paid in full with interest, and also that the plaintiffs would buy up all claims against defendant’s firm that they could buy and hold them to the detriment of defendant’s firm until the claims should be paid in full, principal and interest, and that the plaintiffs would never let go upon the defendant’s firm, “ until they had paid the last dollar.”
The holding of the obligations of a person cannot be a detriment to that person, in the form of a legal injury, and the so called threats were declarations that plaintiffs would do what they had a legal right to do.
The answer also averred that before the plaintiffs had notified the defendant’s firm that the plaintiffs would insist upon the payment of the notes at maturity, the defendant’s firm had made such arrangements in their business, that if the plaintiffs should renew the notes, that business could have been continued to a profit, “ but that by the aforesaid wrongful acts of the plaintiffs, especially in view of the depressing effect which the said wrongful acts of the plaintiffs had upon the mind of Guy B. Seely, one of the defendant’s firm, which incapacitated him in a great measure from transacting the business to any advantage, this defendant and the said Seely were unable to further prosecute their business *289 successfully, as they would otherwise have been able to have done, and their business and affairs were so disarranged ” that it became necessary to make the assignment for the benefit of creditors.
So far as the ability of the firm to continue business, after the maturity of the notes was affected by the plaintiffs declaring that they would not renew the notes, it is clear that this declaration did not tend to lessen the resources of the defendant’s firm. The plaintiffs notwithstanding their declarations could not compel the defendant’s firm to pay the notes, if there were a valid agreement to renew which could be enforced. N. T. Trust & Loan Co. v. Helmer, 77 N. Y. 64; Pomeroy v. Tanner, 70 N. Y. 547. This declaration could not be considered to be a cause of the defendant’s firm stopping business or making an assignment for which the plaintiffs would be responsible.
The effect upon the mind of one of the partners, that incapacitated him from business to a certain extent, certainly did not make the assignment an act of defendant’s firm, not voluntary on their part, especially when the mind of the present defendant was not disturbed.
The plaintiffs were not deprived of the right to consider the making of the assignment as an unusual disaster, which freed them from the obligation to renew, because they had requested the assignment to be made. One of the contingencies of the agreement was that the plaintiffs should advise as a partner might, and giving advice was not to deprive the plaintiffs of the benefits that would accrue to them if the advice were taken.
I am of opinion, therefore, that there were no averments of the answer which modified the inference from the making of the assignment, and that it did not appear that the plaintiffs were bound to renew the notes.
The answer did not set out a defense of usury.
Judgment affirmed with costs.
Freedman and Ingraham, JJ., concurred.